IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2002

## STATE OF TENNESSEE v. MARK A. BALES

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S42,269     R. Jerry Beck, Judge**

_____

**No. E2001-01075-CCA-R3-CD**
**May 9, 2003**
_____

The defendant, Mark Anthony Bales, pled guilty to attempted second degree murder. After accepting his plea, the trial court sentenced the defendant to serve eleven years as a Range I standard offender. The defendant now appeals his sentence arguing that the trial court erred (1) by finding that when the defendant committed the instant crime, he treated the victim with exceptional cruelty; (2) by giving insufficient weight to two applicable mitigating factors, the defendant's excellent social history and his lack of a criminal record; and (3) by sentencing the defendant to a term of years that made him ineligible for consideration for an alternative sentence. After a thorough review of the record, we find that none of the defendant's allegations merit relief and accordingly affirm his sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Bob McD. Green, Johnson City, Tennessee, for appellant, Mark A. Bales.

Paul G. Summers, Attorney General & Reporter; Peter M. Coughlan, Assistant Attorney General; Greeley Wells, District Attorney General; and Todd Martin, Assistant District Attorney General, for appellee, State of Tennessee.

### OPINION

### Factual Background

The defendant is divorced from Sharon Houchins, who is currently married to the victim, Emory Houchins. The defendant and Ms. Houchins have a daughter from their marriage. After the defendant and Ms. Houchins divorced, Ms. Houchins was given primary custody of the defendant's daughter, who, at the time of this incident, lived in a house with Ms. Houchins, the victim, and the

children from Ms. Houchins's marriage to the victim. The defendant's daughter stayed with the defendant in his home every other weekend.

According to the victim, the defendant called the victim's home late one evening, after 9:00 p.m., asking to speak to his daughter. The defendant spoke with his daughter for some time, and then Mr. Houchins told her to end the conversation because of the late hour. When she became visibly upset while on the phone, Mr. Houchins took the telephone from her and explained to the defendant that he should not be calling at this late hour. Mr. Houchins further explained to the defendant that the defendant should not be mad at his daughter; she had ended their telephone conversation at his instruction. According to Mr. Houchins, the defendant responded to him angrily, telling Houchins that he (the defendant) would speak with his daughter anytime he wanted to speak with her. After the defendant hung up, Mr. Houchins decided to add the defendant's number to a list of phone numbers that were blocked from the Houchins phone number. Although Mr. Houchins claimed that he routinely activated the phone block at night and turned it off in the morning, he admitted that due to his busy schedule during the time period before the incident at issue, he may have failed to turn off the phone block.

On the night in question, the defendant, who had discovered that his home phone number had been blocked from reaching the Houchins' home phone number, drove to the Houchins' home and spoke with his ex-wife. According to the defendant, Ms. Houchins denied any knowledge of the phone block. After leaving the Houchins' home, the defendant encountered Mr. Houchins, who was traveling home in his automobile. The defendant followed Mr. Houchins and flashed his headlights at Houchins. Mr. Houchins, believing that he was being signaled to pull over by a law enforcement official, rolled down his window and pulled over to the side of the road. The defendant then approached Mr. Houchins' vehicle and asked him why he had blocked the defendant's telephone number. Mr. Houchins began to answer the defendant's question when the defendant pointed a pistol at him and told him, "[y]ou're a dead man." The defendant then began shooting at Houchins through the open car door window. Mr. Houchins recounted that the defendant attempted to shoot him five times. The first bullet that the defendant fired hit Houchins in his left side and lodged itself a millimeter and a half from his spine, where it still remained at the time of the sentencing hearing. The second bullet entered Mr. Houchins on the left lower portion of his rib cage, traveling upward and injuring his spleen, which was later surgically removed. The third bullet missed the victim, who had dodged its path, and entered the upper portion of the driver's seat. Mr. Houchins then managed to grapple with the defendant over the pistol and was able to reposition the pistol, resulting in the fourth shot missing a direct hit to Houchins and instead hitting his ankle. The victim required twelve stitches in his ankle to repair the wound. As the defendant attempted to fire a fifth shot, Mr. Houchins was able to prevent the defendant from firing the pistol by placing his finger "between the trigger." Houchins required six stitches in his finger to repair the resulting injury. After the defendant attempted to fire this fifth shot, Mr. Houchins rolled up his car window, put his car in drive, and began to pull away. As a result, the defendant was required to drop his pistol into the victim's car in order to pull his hands through the window opening. Mr. Houchins then drove home, where Ms. Houchins called 911 and had the victim transported to a hospital.

As aforementioned, the defendant pled guilty to attempted second degree murder. His plea agreement left the determination regarding the length of his sentence to the discretion of the trial court. The trial court held a sentencing hearing to determine the length of the defendant's sentence and whether the defendant is a suitable candidate for alternative sentencing.

At the defendant's sentencing hearing, Mr. Houchins testified for the state and recounted the incidents as set forth above. A police officer who investigated the incident also testified and reported that the evidence indicated that the defendant attempted to fire his pistol as many as seven times. Additionally, the defendant testified on his own behalf. While testifying, the defendant read a written statement that he had prepared in advance. In his statement, he expressed remorse that he committed the instant crime. He also spoke of his immense love for his daughter and his extensive health problems. Several other witnesses, including several good friends of the defendant's, his former co-workers, and his brother testified on the defendant's behalf. They all agreed that they believe that the defendant has a peaceable character, that this incident was extremely out of character, that the defendant suffers from extensive and debilitating health problems, and that the defendant loves his daughter very much. The trial court also admitted a letter written by one of the defendant's treating physicians. In this letter, the physician stated that the defendant suffered extensively due to his various health problems. However, despite his obvious pain, the defendant had never requested pain medication. The physician stated that it was his opinion that this stoicism was unusual and evidenced strong character.

In rebuttal to this proof regarding the defendant's peaceable character, the state introduced the testimony of Ms. Houchins. Ms. Houchins testified that after her divorce from the defendant, some fourteen years ago, she was awarded custody of their daughter. However, on one occasion, the defendant refused to relinquish custody of their daughter after his period of visitation had expired. Ms. Houchins brought the matter before a court, and the court ordered the defendant to relinquish custody of their daughter to Ms. Houchins. When Ms. Houchins, accompanied by her family members, arrived at the defendant's residence and attempted to regain custody of their daughter, the defendant and his father assaulted Ms. Houchins's father. Ms. Houchins's father was unable to corroborate this testimony as he was deceased at the time of this hearing.

After hearing this proof, the trial court found that enhancement factor (5), that the defendant treated the victim with exceptional cruelty during the commission of the offense; factor (6), that the victim suffered exceptional injury as a result of the defendant's actions; and factor (9), that the defendant used a firearm in the commission of the offense, were all applicable to the defendant's sentence. See Tenn. Code Ann. § 40-35-114(5), (6), (9) (1997).[1] The trial court also found that the victim's impact statement was relevant to support the finding of the applicability of enhancement factors (5) and (6). The trial court then determined that it would give some weight to several of the

_____

[1] The 2002 Amendment to Tennessee Code Annotated section 40-35-114 adds a new sub-section (1) to the statute and accordingly redesignated former sub-sections (1) through (22) as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Thus, the current codification of this statute designates the sub-sections (5), (6), and (9), discussed infra, as sub-sections (6), (7), and (10). See id. We will be using the enumeration applicable at the time of the sentencing hearing as codified in the 1997 edition of Tennessee Code Annotated. See id. § 40-35-114 (1997).

defendant's proposed mitigating factors. Specifically, the court found that the defendant's expressed remorse and his present medical condition were applicable mitigating factors but that it would afford them slight weight. The court also found that the defendant's lack of a criminal record and his reputation as a good citizen in his community were applicable mitigating factors. The trial court ultimately concluded that the applicable enhancement factors far outweighed the applicable mitigating factors, finding that the weight of the enhancement factors was sufficient to elevate the defendant's sentence to the maximum within his sentencing range, twelve years, and that the mitigating factors merited reducing that sentence by one year, resulting in an eleven-year sentence.

The defendant now appeals this sentence on the basis that the trial court applied an inapplicable enhancement factor to his sentence and gave insufficient weight to two applicable mitigating factors and that the resulting excessive sentence made him ineligible for consideration for an alternative sentence. For the reasons set forth below, we find that the trial court properly sentenced the defendant and therefore affirm the trial court's judgment.

## Sentencing Challenge

As mentioned supra, the defendant challenges the trial court's imposition of an eleven-year sentence for his attempted second degree murder conviction as excessive. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. See Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Turning more specifically to the facts of this case, the defendant was convicted of attempted second degree murder. Since this offense is a Class B felony, the starting point for sentencing determinations is the minimum sentence within the defendant's sentencing range. See Tenn. Code Ann. § 40-35-210(c). Undisputably, this defendant was a Range I offender; thus, the defendant's sentencing range is eight to twelve years. See id. § 40-35-112(a)(2). Accordingly, the trial court was required to start with the defendant's presumptive sentence, eight years, increase his sentence by applying any relevant enhancement factors, and then reduce his sentence by applying any relevant mitigating factors. See id. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given

to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record.  Id.

We first note that the record reveals that the trial court carefully considered the sentencing principles as well as all relevant facts and circumstances when sentencing the defendant. Accordingly, we will review the trial court's sentence determination de novo with a presumption that the trial court's sentencing determinations are correct.  See Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169.

The defendant challenges the applicability of enhancement factor (5) to his sentence.  He claims that this enhancement factor is inapplicable to the facts of his case because there is no evidence to demonstrate that he treated the victim with exceptional cruelty during the commission of his offense, i.e. "cruelty above that needed to effectuate the crime." State v. John Dennis Rushing, No. 01C01-9501-CR-00020, 1996 WL 63920, at *11 (Tenn. Crim. App. at Nashville, Feb. 13, 1996). The state counters that the trial court properly applied this factor to the defendant's sentence, arguing that while exceptional cruelty is often found in cases involving torture of the victim, courts have routinely applied the application of this enhancement factor in cases involving multiple gunshot wounds.

Treatment of one's victim with "exceptional cruelty" is not an element of attempted second degree murder. See Tenn. Code. Ann. §§ 39-13-210; 39-12-101. Therefore, this enhancement factor is applicable to the offense of attempted second degree murder.   As the defendant correctly notes, exceptional cruelty is "usually found in cases of abuse or torture." State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995).  Moreover, our supreme court recently held that before a trial court may apply enhancement factor (5) to increase a defendant's sentence, the facts of the case must support a "finding of cruelty under the statute 'over and above' what is required to sustain a conviction for [the] offense." State v. Arnett, 49 S.W.3d 250, 258-59 (Tenn. 2001).  However, as the state correctly argues, this Court has held that the infliction of multiple wounds is sufficient to support the application of enhancement factor (5).  See, e.g., State v. Darrin Bryant, No. W2000-01136-CCA-R3-CD, 2001 WL 792616, at *7 (Tenn. Crim. App. at Jackson, July 11, 2001) (finding that the defendant's infliction of "up to" eight stab wounds on the victim, who was asleep at the time of the attack, was sufficient to warrant the application of enhancement factor (5) to the defendant's conviction for attempted first degree murder); State v. David Scarborough, No. E1998-00931-CCA-R3-CD, 2001 WL 775603, at *22 (Tenn. Crim. App. at Knoxville, July 11, 2001) (finding that the defendant's infliction of five and seven gun shot wounds on his two victims, who were living at the time they received the wounds, was sufficient to warrant the application of enhancement factor (5) to the defendant's conviction for aggravated burglary); State v. Cedric E. Stampley, No. 02-C-01-9409-CR-00208, 1996 WL 465557, at *8 (Tenn. Crim. App. at Jackson, Aug. 16, 1996) (finding that the trial court appropriately applied enhancement factor (5) to the defendant's attempted first degree murder conviction because Stampley shot his unarmed victim seven times, and "the infliction of numerous wounds satisfies [the application of enhancement] factor [(5)]" and citing, as support for this proposition, cases in which this Court has found that the infliction of multiple wounds was sufficient to trigger the application of this factor: State v. William R. Waters, Jr., No. 01C01-9404-

CR-00145, 1994 WL 714246 (Tenn. Crim. App. at Nashville, Dec. 22, 1994); State v. Mallory Michael Roberts, No. 01C01-9309-CR-00295, 1994 WL 406166 (Tenn. Crim. App. at Nashville, Aug. 4, 1994); State v. Terry Joseph Million, No. 01C01-9303-CC-00100, 1993 WL 488323 (Tenn. Crim. App. at Nashville, Nov. 24, 1993)).

Affording the trial court's sentence determination a presumption of correctness, we find that the trial court appropriately applied enhancement factor (5) to the defendant's conviction for attempted second degree murder. As the trial court stated on the record, the defendant waylaid the victim in his neighborhood when the victim was traveling to his nearby home. In response to the defendant's flashing automobile lights, the victim pulled over to the side of the road and rolled down his driver's side window. Shortly thereafter, the defendant told the victim that he was a "dead man" and began firing his pistol into the passenger compartment of the automobile. The defendant attempted to shoot the victim as many as seven times and was only thwarted in his aim of killing the victim by the victim's evasive maneuvering. As in Stampley, we find that the defendant's firing of multiple gunshots on an unarmed victim is sufficient to support the trial court's application of enhancement factor (5) to the defendant's attempted second degree murder conviction.

The defendant contests the lack of weight that the trial court afforded to two applied mitigating factors, the defendant's excellent social history and his lack of a criminal record, both of which the trial court applied to the defendant's conviction pursuant to the catch-all mitigating factor, factor (13). See Tenn. Code Ann. § 40-35-113(13). However, the weight given to each enhancement or mitigating factor is within the discretion of the trial court, provided that the trial court has complied with the purposes and principles of the Sentencing Act and provided that its findings are supported by the record. See State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997); Santiago, 914 S.W.2d at 125. As discussed supra, we find that the trial court properly considered the principles of the Sentencing Act and all relevant facts and circumstances of the defendant's case and that the court's findings are supported by the record. Accordingly, we will not second guess the trial court's assignment of slight weight to these two mitigating factors.

In summary, because we find that the trial court properly applied enhancement factor (5) to the defendant's conviction, because the defendant does not challenge the applicability of the other enhancement factors, and because we decline to second guess the trial court's assignment of slight weight to the two mitigating factors challenged by the defendant, we find that the defendant's resulting eleven-year sentence is appropriate. Therefore, despite the defendant's argument to the contrary, we find that the defendant was appropriately sentenced.

## Conclusion

For the foregoing reasons, we find that the defendant's sentencing challenge lacks merit. Accordingly, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE